UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SUSAN MARIE FORSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-184 JD |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Susan Marie Forsey appeals the denial of her claim for disability insurance benefits. For the following reasons, the Court remands this matter to the Commissioner for further proceedings consistent with this opinion.

### BACKGROUND

Ms. Forsey filed her initial application for benefits on February 19, 2014, alleging disability beginning May 28, 2008. She later amended the onset date to May 26, 2012, and her date of last insured was June 30, 2015. Ms. Forsey's application was denied initially, on reconsideration, and following an administrative hearing in September 2016 at which she was represented by counsel. At that hearing, the ALJ heard testimony from Ms. Forsey and vocational expert Tobey Andre. The ALJ found that Ms. Forsey had some severe impairments but that she was not disabled during the adjudicative period, May 26, 2012, through June 30, 2015. *See* 20 C.F.R. § 404.1520. The Appeals Council denied review of the ALJ decision, making the ALJ's decision the final determination of the Commissioner.

1

## STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

# DISCUSSION

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at

step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Forsey now challenges several aspects of the ALJ's opinion. First, she argues that the ALJ erred at step three by finding that her impairments did not satisfy Listing 1.02 without providing sufficient analysis. Second, that the ALJ failed to weigh the medical opinions of various physicians. Third, that the ALJ failed to support his RFC assessment with sufficient evidence and thereby failed to account for Ms. Forsey's psychiatric disorder, bilateral knee problems, and osteoarthritis in her hands. And fourth (subsumed within Ms. Forsey's attack on the ALJ's RFC determination), that the ALJ improperly assessed her statements concerning the intensity, persistence, and limiting effects of her symptoms to be inconsistent with the medical evidence. The Court need not address Ms. Forsey's first two arguments, however, because the ALJ committed critical errors by failing to explore possible reasons for Ms. Forsey's limited treatment in 2015, and by neglecting to consider Ms. Forsey's non-severe psychological impairments when crafting the RFC.[1] These errors necessitate remand.

1. **Subjective Complaints – Failure to Seek Treatment**

Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly

---

[1] The Court need not examine whether the ALJ sufficiently addressed Ms. Forsey's bilateral knee problems and osteoarthritis in light of the Court's finding that the RFC failed to take her psychological disorders into account. Ms. Forsey is of course free to pursue her arguments regarding these conditions on remand, along with her arguments pertaining to Listing 1.02 and weight of opinion evidence.

4

articulated so the individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16-3p[2] (superseding SSR 96-7p); *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record."). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Id.*; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

Failure to seek medical treatment in the face of claimed illness can be a factor in evaluating credibility. *See Schaaf v. Astrue*, 602 F.3d 869, 876 (7th Cir. 2010); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). Nonetheless an ALJ "'must not draw any inferences' about a claimant's condition from [her failure to seek treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft*, 539 F.3d at 679 (citing SSR 96-7p). "ALJs have a duty to consider factors like inability to travel, mental illness, or economic constraints that may have prevented claimants from seeking or receiving medical care." *Orienti v. Astrue*, 958 F. Supp. 2d 961, 977 (N.D. Ill. 2013) (citing *Godbey v. Apfel*, 238 F.3d 803, 809 (7th Cir. 2000)).

In evaluating the intensity, persistence, and limiting effects of Ms. Forsey's symptoms, the ALJ relied heavily upon his perception that she did not seek any further treatment in 2015 following a visit to Dr. Stephen Smith on March 19 of that year, whom she had been consulting

---

[2] A little more than one year before the ALJ issued his opinion in this case, the Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Instead, the ALJs are reminded to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," as consistent with the regulations. *Id*. Under either SSR version the outcome in this case would be the same.

5

for chronic neck, back, and shoulder pain. (R. 541). The ALJ cited this lack of follow up at no fewer than four distinct points in his credibility assessment:

> In fact, in March 2015, the claimant reported she was going to Norfolk and Virginia Beach and was requesting ten extra Percocet for the car ride, and the hiking, she was planning to do. *There was no other follow up in 2015*.
>
> …
>
> She had severe left shoulder derangement and required two surgeries. An MRI later disclosed severe right shoulder derangement and there was discussion of surgery, *but she hardly had any follow up in 2015*.
>
> …
>
> The lack of supportive objective findings on longitudinal examinations to support alleged disability, and inconsistent reports about her functioning, all together render her subjective reports inconsistent with and grossly disproportional to the objective medical evidence and findings in the record. For example, pain improved with treatment such that she was able to plan travel and hiking *and she hardly had any follow up in 2015*.
>
> …
>
> An MRI showed osteoarthritis of the right AC joint and internal derangement. *While surgery was discussed, there was no follow up in 2015 and it was not scheduled until 2017, which shows the right shoulder was not as significantly symptomatic. Therefore, I find she could frequently, but not constantly, reach in all directions with the right arm to avoid pain exacerbation.*

(R. 23-24) (emphasis added). In other words, the ALJ used Mr. Forsey's limited treatment history in 2015 to discredit her statements regarding the severity of her pain and cited her failure to schedule right shoulder surgery that year as indicative of her ability to frequently reach in all directions with her right arm, which formed part of the ALJ's RFC.

The ALJ erred here in several ways. First and most critically, the ALJ made no evident attempt to determine why Ms. Forsey elected not to pursue additional treatment or schedule right shoulder surgery in 2015. He simply inferred from the lack of medical records for that year that her symptoms were not as serious as alleged and that she could "frequently reach overhead and

6

in other directions with the right upper extremity" during the adjudicative period. (R. 20). Notably, while the ALJ mentioned in summary fashion that Dr. Christopher Balint planned for arthroscopic right shoulder surgery as early as July 2014 (R. 22, 402), he never attempted to find out *why* Ms. Forsey's right shoulder surgery did not take place until 2017. His failure to explore reasons for a gap in Ms. Forsey's treatment was a legal error, requiring remand. *See Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (remanding where ALJ improperly relied on the fact that claimant elected not to undergo knee surgery without attempting to explore the reasons for claimant's decision).

The ALJ's shortcoming here is only compounded by the several pieces of evidence in the record that otherwise provide context for Ms. Forsey's lack of treatment in 2015. For example, in August 2014, Ms. Forsey informed Dr. Daniel Cooke that Dr. Balint had recommended surgical intervention for her continued shoulder problems, but that her chronic smoking had prevented the surgery from being scheduled. (R. 532). Indeed, part of Dr. Balint's surgical plan in July 2014 included the instruction that Ms. Forsey stop smoking. (R. 402). It appears Ms. Forsey was able to quit briefly toward the end of 2014 (R. 545), but by March 2015, Dr. Smith noted that she reverted to a "current every day smoker." (R. 601). Additionally, medical records dated February 2015 indicate that Ms. Forsey did not wish to undergo any more surgeries on her back or shoulders (R. 542); she testified that she put off surgery on her right shoulder because she remained fearful from a prior surgical mishap where doctors punctured her dural sheath, resulting in complications. (R. 55, 60). By drawing an inference about Ms. Forsey's lack of treatment in 2015 without considering any of this relevant context, the ALJ impermissibly engaged in "cherry-picking" facts from the medical record to support his conclusions while ignoring evidence from the same record that supports Ms. Forsey's allegations. *See Denton v.*

7

*Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

In addition, the ALJ failed to consider evidence of financial barriers to treatment contained in the record. For example, during the adjudicative period, Ms. Forsey was referred to a psychiatrist. (R. 443). But at the hearing, Ms. Forsey testified that she stopped seeing her therapist once she discovered that her insurance did not cover the treatment, leaving her "stuck with a very large bill." (R. 67).[3] And it was further noted in March 2014 that Ms. Forsey was experiencing difficulty obtaining a bone growth stimulator due to insurance roadblocks. (R. 384). A claimant's inability to afford treatment can excuse the failure to seek such treatment, and by failing to explore this possibility as an explanation for Ms. Forsey's lack of treatment in 2015, the ALJ committed error. *Myles*, 582 F.3d at 677; *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (noting that "the agency has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment") (citing SSR 96-7p).

Furthermore, the medical record belies the ALJ's statements that Ms. Forsey had "no other follow up" after her March 2015 appointment. Shortly before the date of last insured (June 30, 2015), Ms. Forsey sought treatment for her right shoulder on or about June 4, 2015, when she presented to Dr. Smith with "an occipital neuralgia type pain on the right as well as some arm

---

[3] While Ms. Forsey does not challenge whether the ALJ erred at step two in finding her mental impairments of panic disorder and somatization disorder non-severe, the Court invites the ALJ to reevaluate this conclusion in light of Ms. Forsey's testimony regarding her lack of insurance coverage for therapy. At step two, the ALJ based his finding in part on his observation that Ms. Forsey "was referred to psychiatry, but she apparently never followed up." (R. 18). As above, the ALJ drew conclusions from Ms. Forsey's lack of treatment without exploring the context of her failure to follow up. This shortcoming is only exacerbated by her testimony. Moreover, the ALJ should approach the treatment issue with caution when a claimant has a mental illness. *Barnes v. Colvin*, 80 F. Supp. 3d 881, 887 (N.D. Ill. 2015). The Seventh Circuit has recognized that mental illness "may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006).

pain" that caused her pain with range of motion. (R. 618). The ALJ made no mention of this record except for a fleeting citation to Ms. Forsey's pain in his step two analysis (R. 18); he did not reconcile this record with his observations regarding Ms. Forsey's limited treatment in 2015, nor with the conclusions he drew therefrom about her symptomatic complaints. Although the ALJ need not consider every piece of evidence in the record, given his emphasis on Ms. Forsey's lack of follow up treatment in 2015, he should rectify this logical gap on remand. *Terry*, 580 F.3d at 475.

**2.     Non-Severe Mental Limitations**

Ms. Forsey also argues that the ALJ erred by failing to consider her psychological diagnoses and related symptoms when formulating the RFC. In formulating a claimant's residual functional capacity, the ALJ must consider all of the relevant evidence in the record, and must build "an accurate and logical bridge from the evidence to her conclusion." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). In doing so, "an ALJ must consider the combined effects of all of the claimant's impairments," even those that are not severe. *Terry*, 580 F.3d at 477; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (noting that "the ALJ needed to consider the aggregate effect of this entire constellation of ailments"). Thus, even if a condition would not be disabling on its own, an ALJ must still consider the evidence relating to that condition and decide what limitations, if any, it would have on the claimant's ability to work. *Id.*

At step two, the ALJ determined that Ms. Forsey's diagnoses of panic disorder and somatization disorder caused no more than a minimal limitation to her ability to perform basic mental tasks and were therefore non-severe. (R. 18). Assessing Ms. Forsey's mental functioning, the ALJ found that she had mild limitations interacting with others and adapting or managing herself. (R. 18-19). Before moving on to step three, the ALJ noted that "the following residual

functional capacity assessment reflects the degree of limitation I have found" in the mental functioning analysis. (R. 19).

The rest of the ALJ's opinion, however, makes no mention of Ms. Forsey's non-severe mental limitations, and the ALJ never explains *why* or *how* Ms. Forsey's limited ability to interact with others, adapt, or manage herself deserve no part in the RFC. In other words, the ALJ summarily states that his RFC analysis reflects the mental functioning limitations he assessed at step two, but then fails to explain how it is that those limits translate to Ms. Forsey's specific abilities to work during the adjudicative period. Thus, the ALJ failed to consider the combined impact of Ms. Forsey's impairments "throughout the disability determination process." 20 C.F.R. § 404.1523. He has left the Court unable to adequately review his RFC analysis, especially given Ms. Forsey's October 2014 neuropsychiatric evaluation results, in which Dr. Paul Macellari observed a "reduced level of psychological functioning" stemming from generalized hypersensitivity and fearfulness that "certainly may be debilitating to her in both social and work settings." (R. 424-25). The ALJ overlooked these particular observations, further adding to his error. *See Myles*, 582 F.3d at 678 ("It is not enough for the ALJ to address mere portions of a doctor's report.") The ALJ's failure to account for Ms. Forsey's non-severe mental limitations in his RFC analysis requires remand. *Denton*, 596 F.3d at 523 (citing *Terry*, 580 F.3d at 477; *Golembiewski*, 322 F.3d at 918).

## CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: February 11, 2019

                                                                                    /s/ JON E. DEGUILIO  
                                                          Judge  
                                                          United States District Court